Christian J.
delivered the opinion of the court.
This case is before us on a writ of error to a judgment of the Circuit court of the city of Richmond.
The following are the material facts disclosed by the record.
Henry Cox was the executor of Edward Cox. He held in his hand as such executor a considerable amount. ' He could not, it seems, distribute this amount among the legatees entitled, in consequence of pending litigation. Whereupon he filed his bill in the Circuit court of Henrico, asking the advice of the court as to a proper disposition of the fund. That court on the 17th of May 1854, entered its decree by which it was declared “that the plaintiff (Henry Cox) be authorized to invest any money of his testator’s now in his hands, or which may hereafter come into his hands, on six per cent, loan of the state of Virginia, or bonds guaranteed by the state, or in loans to individuals secured on real estate, and on such additional security as he may think proper, taking bonds and certificates in Ms own name as executor, the interest thereon to be paid semi-annually and the principal when he may so require, and hold and account therefor as executor aforesaid.”
The record further shows that acting under this decree, the executor Henry Cox, in November 1857, loaned to Goddin and Apperson the sum of $14,082.52, for which they executed their bond, and secured the payment thereof by a deed of trust upon real property. That sometime in the fall of 1861, Goddin and Apperson desiring to pay off this bond, requested Cox to receive payment; but he expressed his unwillingness to receive it, saying the money was not needed, and as it was well invested he was unwilling to receive it. *184 The defendant Goddin had several interviews with the plaintiff, who always expressed.an unwillingness to receive the money. Finally about the month of December 1861, the defendant Goddin again saw the plaintiff and asked him if he (Goddin) could find a party who would borrow the money upon the same terms that they (Goddin and Apperson) held it, if he (the plaintiff) would be willing to take such party and release them. To this proposition the plaintiff assented. Shortly thereafter, in January ’62, Goddin saw the defendant Cabell, and informed him if he wanted money he could effect a considerable loan for him, which he thought he could keep for a long time, as the money belonged to an estate, and was held in a fiduciary character, and would not be wanted for a considerable time. Cabell said he would think of the matter; and shortly thereafter told Goddin he would take the loan. This happened in the month of January 1862, but was not consummated until the 4th February 1862, when Cabell, with Goddin and Apperson as his sureties, executed the bond sued on, and secured the payment of the same, by deed of trust on certain real property in and near the city of Richmond. Thereupon Cox delivered up to Goddin and Apperson their bond and a release of the deed executed by them.
The bond executed by Cabell, with Goddin and Apperson as sureties, and which is the subject of controversy in this suit, is in the following words:
“Know all men by these presents, that we, Henry C. Cabell, Wellington Goddin, and James L. Apperson, are held and firmly bound unto Henry Cox, executor of Edward Cox deceased, and commissioner under a decree of the Circuit court of Henrico in the case of *185 Cox v. Read and others, in the just and full sum of twenty-eight thousand one hundred and sixty-five dollars and four cents; for the payment whereof we bind ourselves jointly and severally by these presents, sealed with our seals and dated the 1st day of January 1862.
The condition of the above obligation is such, that whereas the above bound Henry C. Cabell has borrowed of the said Henry Cox, executor and commissioner as aforesaid, the principal sum of fourteen thousand eighty-two dollars and fifty-two cents of the money of his testator’s estate, which by the decree aforesaid he is authorized to put out at interest. How therefore, if the above bound Henry C. Cabell shall, whenever required by the said Henry Cox, or by an -order of the court in said cause, pay the said sum of fourteen thousand and eighty-two dollars and fifty-two cents, with all interest in arrear thereon, and meanwhile pay the interest as it shall accrue semi-annually on the 1st day of July and 1st day of January in each year, then the above obligation is to be void, otherwise to remain in full force.”
(Signed by Henry C. Cabell, W. Gloddin, and J. L. Apperson.)
Hpon this bond an action of debt was brought in the Circuit court of the city of Richmond. The defendants demurred to the declaration, pleaded payment, and tendered two special pleas in writing. The Circuit court overruled the demurrer, rejected the special pleas, and issue being joined on the plea of payment, and a jury being waived, the court gave judgment for the penalty of the aforesaid bond to be discharged by the payment of fourteen thousand and eighty-two dollars and fifty-two cents, with interest from 1st January 1862, subject to a credit of sixteen *186 hundred and eighty-eight dollars paid 27th February 1864.'
It was from this judgment that a writ of error was allowed by this court.
The court is of opinion that there is no error in the judgment of the Circuit court. First. The demurrer was properly overruled. There was no, substantial variance between the bond of which oyer is craved, and the bond set out in the declaration. The bond sued on was due not to his testator, but to Henry Cox, the executor. The legal title was in him, and he had the right to demand and sue for the same. The words in the bond, “executor of Edward Cox, deceased, and commissioner of the Circuit court of Henrico, in the case of Cox v. Read and others,” may be regarded as mere descriptio personae. Henry Cox being the executor, and the debt being payable to him and not to his testator, he may bring the suit in his own name.
Second. There was - no error in the judgment of the Circuit court in rejecting the two special pleas offered by the defendants. The first plea alleges that the action could not be maintained against the defendants, “because they say that no order has ever been made by the court in the said suit of Cox v. Read, requiring-of these defendants, or either of them, to pay the said sum of $14,082.52, with interest as demanded, or any part thereof.”
The 2nd plea alleges that the action cannot be maintained, because the plaintiff has never been authorized or required by an order or decree of the court in said suit of Cox v. Read, or otherwise, to collect the said sum of $14,082.52, or any part thereof, and that he hath no lawful authority to collect the same by suit or otherwise.”
The decree of the Circuit court of Henrico in the. *187 suit of Cox v. Read &c., was before tbe Circuit court of Richmond, and is a part of the record in this case. Looking to that decree, we find that Cox was directed to loan out the fund in his hands, or which might come into his hands on certain security specified, and to take “bonds and certificates in his own name as executor, the interest thereon to be paid semi-annually, and the principal, when he may so require, and hold and account therefor as executor aforesaid.” It is plain under this decree, that Cox had plenary authority to collect and call in the fund loaned out at any time he saw fit, and no further order of the Circuit court was necessary either to require the parties, who had borrowed the money, to pay it into court, or to the executor, or to authorize the executor to collect it. He was already invested with that power by the decree under which he acted, and there was no occasion or necessity for any further order. The court was therefore not in error in rejecting the two special pleas.
Third. The said Circuit court did not err in giving judgment for the whole amount of the bond upon the issue made up on the plea of payment.
The only question between the parties upon that issue was, whether the debt was subject to be scaled under the act of the 3rd March 1866. It is clear, upon the facts of this case, that under numerous decisions of the court it must be held that the bond sued upon is not such a contract as comes within the terms or spirit of the adjustment act above referred to.
The scale of depreciation is applied, only in a case where it appears that according to the true understanding and agreement of the parties (that is, of both parties), the contract was to be fulfilled or performed in Confederate States treasury notes, or was entered into with reference to said notes as a standard of value. *188 Ho such “agreement or understanding” “appears” either from the facts proved in the case or from any possible reasonable implication from those facts. But the very contrary appears. Cox, as executor under the decree above referred to, had loaned the money (114,080.52) to Goddin and Apperson in the year 1857. He was unwilling to receive it, as it was safely invested and he did not need it for the use of the estate he represented. He only yielded, after repeated interviews, to the solicitations of Goddin, who conducted the negotiations, upon condition that he would find a party who would borrow the money upon the same terms that they, Goddin and Apperson, held it. Cox had no personal interview with Cabell, and no dealings with him in reference to the negotiation. Cabell’s bond and Cabell’s deed of trust were simply accepted by Cox in the place of the bond and deed of Goddin and Apperson: and Cabell in effect assumed to pay the debt of Goddin and Apperson, upon the latter paying over to Cabell the money due to Cox. This was certainly Cox’s understanding of the matter. He certainly did not agree to receive a depreciated currency for a gold debt due to him as executor already amply secured. He was unwilling to changé the investment already made, and did it, at last, for the accommodation of the defendants. It never could have entered into his mind for a moment, that when he accepted Cabell’s bond and Cabell’s deed of trust, he was thereby agreeing to receive a less amount than that for which Goddin and Apperson were bound to him.
As to what was the understanding of Cabell, the record is silent. It is argued here that he received Confederate money of Goddin, and ought to be re *189 quired to pay only the value of Confederate money in gold at the time he received it.
True, he received Confederate money; but at that time (February 1862) this currency was but little depreciated, and though according to the gold scale $1.20 was worth only $1.00, its purchasing value was but little, if any, less than gold, and it was universally received in payment of ante bellum debts at that time dollar for dollar. Colonel Cabell might have paid debts or purchased property with the $14,000 he received, without suffering any loss from its depreciation. Whether he did or not, the contract which he made with Cox is not one to which, under the decisions of this court, the scale of depreciation can be applied. See Walker, personal representative, v. Pierce, 21 Gratt. 722; Bowman v. Miller & Co., 25 Gratt. 381; Tams v. Brannaman, 23 Gratt. 809; Shiflett v. Long’s adm’x, 23 Gratt. 718.
The judgment of the Circuit court of Richmond must be affirmed.
Judgment affirmed.